IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAMUEL AUSTIN, | ) | |
| | ) | CV S 99-529-OMP |
| Plaintiff, | ) | |
| | ) | ORDER REGARDING DEFENDANT'S |
| v. | ) | THIRD SET OF MOTIONS IN |
| | ) | LIMINE AND REQUEST FOR |
| JAMES WILLIAMS, | ) | MODIFICATIONS TO THE |
| | ) | JURY INSTRUCTIONS |
| Defendant. | ) | |

PANNER, J.

A.  **Conclusions in the Investigative Services Report**

Defendant seeks to redact all conclusions stated by Lt. Miles in his investigative report. The motion is denied. Fed. R. Evid. 803(8)(C) authorizes admission "in civil actions . . . [of] factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

Lt. Miles' report resulted from an investigation made pursuant to authority granted by law. "[P]ortions of investigatory reports otherwise admissible under Rule 803(8)(C) are not inadmissible merely because they state a conclusion or

1 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 170 (1988).

Miles' report explains how the investigation was conducted and he arrived at his conclusions. These conclusions are rational and supported by the evidence. The report includes a transcript of each interview conducted by Lt. Miles, and copies of the documents he reviewed, so the jury knows what evidence Miles relied on (along with his experience) in reaching his conclusions. Lt. Miles had the benefit of interviewing these witnesses when the matter was still relatively fresh in their minds; seven years later, memories have dimmed for many. The circumstances under which the interviews were conducted were calculated to impress upon the witness the importance of telling the truth. Each witness faced serious sanctions if caught lying.

Defendant questions the competency of Lt. Miles to conduct this investigation, and suggests that he was somehow biased against Defendant. Having observed Lt. Miles testify, and read his report, I have no reason to question either his competency or credibility. Defendant offers no substantial evidence to the contrary. Defendant also provides no evidence that (nor plausible reason why) Lt. Miles or the Department of Corrections were biased against Defendant, their own employee, in favor of an inmate.

Defendant complains he didn't have an opportunity to cross-examine witnesses at the time of the investigation. Defendant did cross-examine these witnesses during the first trial, and may do so again at the retrial. Furthermore, the conclusions of Lt. Miles were premised in large part upon Defendant's own admissions.

Defendant cites a case involving an incomplete or preliminary report; that isn't the circumstance here. Defendant also complains that Miles' report is based almost entirely upon hearsay. I disagree. Each witness appeared in front of Miles and described what he personally observed, heard, and did. There was a comparatively small amount of true hearsay evidence, some favoring the Plaintiff and some favoring the Defendant. At trial, the parties elicited much of that same hearsay. See, e.g., Tr. 318, line 22 to Tr. 319, line 16 (testimony of Charlene Foster regarding what inmates other than the Plaintiff told her about the incident).

I conclude that the report, including its conclusions, satisfies the requirements of Rule 803(8)(C).

Defendant correctly observes that the court has discretion to exclude the report under Rule 403, if appropriate. Defendant suggests that allowing Lt. Miles' conclusions into evidence will effectively negate the trial and usurp the role of the jury. I disagree. Moreover, as Defendant acknowledges, the report concerns only a preliminary issue in the case, namely, whether Defendant exposed himself to Plaintiff. Lt. Miles offered no

opinion on the ultimate issue in the case, whether Defendant retaliated against Plaintiff for reporting, or expressing an intent to report, the alleged exposure incident. Retaliation was not the subject of Miles' investigation. Allowing the full report into evidence will help to organize and expedite the preliminary matters, letting the jury and parties focus on the ultimate issue. The parties have spent six years, countless hours, considerable taxpayer expense, and now two trials litigating this matter. Defendant's objection is overruled.

B.  **Evidence Concerning a Grievance Against Crawford and Brumfield**

Defendant seeks to exclude all evidence concerning a grievance Plaintiff filed against Crawford and Brumfield, in which Plaintiff alleged he was coerced into withdrawing his original grievance against Defendant Williams. This motion is confused by Defendant's efforts to argue the merits of whether Plaintiff actually was coerced, or if it was done at the behest of Williams.

We will not spend a lot of time on this issue. As in the first trial, Plaintiff may offer any evidence that he was told, by prison officials, that he must withdraw his grievance against Williams in order to be released from administrative segregation. Such evidence may bear on any retaliatory motive or cover-up. If credited by the jury, it could also shed light on why Plaintiff remained in administrative segregation for six weeks, ostensibly to protect the integrity of an investigation that, Plaintiff

4 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

contends, was not even assigned to an investigator until months later, and why Plaintiff eventually was released from administrative segregation.

Evidence that Plaintiff promptly filed a second grievance, claiming he was coerced into withdrawing the first grievance, also bears on whether Plaintiff later fabricated the coercion story for purposes of this litigation, as Defendant strongly suggested at the first trial. Finally, such evidence is relevant to whether Plaintiff withdrew his first grievance because he knew it was false, or for another reason.

The testimony on this issue should not take long. The state employee witnesses have already said they have little present recollection of those events, and can say little more than what their usual practice was or was not, and point to the documents.

C.  **Motion to Modify Jury Instructions**

Defendant seeks to modify the jury instructions used in the first trial. The jury was instructed, in relevant part, that:

> Prison inmates necessarily surrender many rights by virtue of being imprisoned. However, prison inmates have certain basic rights that the law protects. One such right is that a prison employee may not retaliate against an inmate for reporting what the inmate, in good faith, believes to be misconduct, or for having expressed an intent to report such misconduct.
>
> Plaintiff Austin contends that Defendant Williams behaved inappropriately toward him, and then retaliated against Austin because the Plaintiff either reported, or said he intended to report, Williams' misconduct to prison officials.

To prevail on this claim, Plaintiff Austin must prove each of the following elements by a preponderance of the evidence:

1. That Plaintiff Austin either reported, or expressed an intent to report, inappropriate conduct by Defendant Williams.

2. That because of this, Defendant Williams retaliated against Plaintiff by submitting a false report, or otherwise furnishing false information, to prison officials.

3. That, as a result of this false report or information, Plaintiff Austin was placed in administrative segregation.

4. That Defendant Williams either intended this result, or was aware that his false report or information would likely result in disciplinary or other adverse action against Plaintiff Austin.

Defendant first contends the instructions are defective because they don't require the jury to find "that placement in administrative segregation is not a legitimate correctional goal." Defendant allegedly exposed his genitals to an inmate. After the inmate said he intended to report this misconduct, Defendant allegedly retaliated by filing a false report or otherwise providing false information to his superiors, with the intent or knowledge that this false report would likely result in prison officials taking disciplinary or other adverse action against that inmate. I have determined, as a matter of law, that such conduct does not constitute "legitimate penological purposes." Accordingly, if the jury finds for the Plaintiff, it necessarily has determined that Williams' conduct was not

6 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

"narrowly tailored to advance a legitimate correctional goal." We will not prolong the trial, or confuse the jury, with evidence and instructions on a matter about which there can be no real dispute.

Defendant insists that placing an inmate in administrative segregation to protect the integrity of an investigation can be a legitimate correctional goal. Even assuming that is true, it is largely beside the point. Suppressing prison riots, and freeing hostages, can be a legitimate correctional goal, though deadly force must sometimes be used. See Whitley v. Albers, 475 U.S. 312 (1986). However, if a guard deliberately retaliated against an inmate by falsely reporting that the inmate had a weapon and was holding a hostage--as a consequence of which the inmate predictably was shot and killed by other guards--the individual who made the false report could still be liable, notwithstanding that his fellow guards acted appropriately in light of the information they were given. Here, it is no defense that some other prison official took action against Plaintiff Austin, if that action was premised upon a false report filed by the Defendant in order to retaliate against Austin. In this proceeding, the Plaintiff is not seeking damages from Lt. Roll or from any other prison official, only from Defendant Williams, for the latter's own (allegedly) wrongful actions.

Defendant can, of course, deny that he did the acts in question. If the jury believes his version of events, then he will prevail.

7 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

Defendant next argues that the jury instructions are defective because they fail to instruct the jury on causation. The instructions adequately cover that subject already.

D. **The "Wrong Rule"**

The report Williams submitted (or at least the version that later surfaced[1]) accuses Plaintiff Austin of violating a specific disciplinary rule, 15 Cal. Code Reg. § 3005(c) (1998). That rule prohibits the use of violence, threats of violence, or inciting others to violence. It is undisputed that Austin did not violate this rule on the date in question. Defense counsel now suggests, for the first time, that his client would have been justified in citing Plaintiff for violating a different rule, § 3315(a)(3)(H).[2]

Defendant's motion asserts that the "court may not find that the report was false because Mr. Williams cited the wrong rule."

---

[1] The history of Exhibit 110 (Exhibit 3 to the Investigative Report) is disputed. Williams testified at trial that he gave that document to Lt. Roll shortly after the incident. However, Lt. Roll stated that the documents he received from Williams (and others) vanished from a locked box shortly afterwards. At trial, Lt. Roll did not recognize Exhibit 110 as a document he received from Williams, but could not preclude that possibility. During an interview in November 1998, Lt. Roll stated that he had asked Williams to submit a replacement copy of the missing report, but Williams never complied.

There is some evidence that Exhibit 110 may be a document Defendant Williams wrote at least several weeks, and perhaps months, after the incident, and gave to Lt. Miles during an interview in November 1998. At the time, Williams represented that the document he gave Miles accurately reflected the 115 Form he had given Lt. Roll four months earlier. At the first trial, Williams testified that he "wrote [the 115 Form] up as a 3005 C." That is the same charge that appears on Exhibit 110.

[2] Counsel never expressly represents that his client --an experienced prison guard-- actually did confuse the two rules.

8 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

Actually, it is the jury, not the court, that will make any such determination. Defendant's argument relies on several <u>due process</u> cases that discuss an inmate's right to notice of the charges against him, whether a discrepancy in the notice renders it invalid, and whether the prison's disciplinary decision can be upheld despite an error in the charging instrument.

This is not an appeal from a prison disciplinary proceeding, nor a due process claim. The question here is whether Defendant retaliated against the Plaintiff by filing a false report or otherwise providing false information. Deliberately charging an inmate with a serious offense, that the Defendant knew the inmate had not committed, can certainly constitute retaliation. Defendant may, of course, argue to the jury that he made an honest mistake, he did not intentionally submit a false report, and he may deny that there was any improper motivation for his actions. Plaintiff can point to any evidence that suggests otherwise. The jury will decide which version it believes.

To avoid any possible confusion, I will modify the instructions by adding the word "deliberately" to the second element, which will now read:

> 2. That because of this, Defendant Williams retaliated against Plaintiff by deliberately submitting a false report, or otherwise furnishing false information, to prison officials.

This will eliminate any remote possibility that a jury could find that Defendant Williams intentionally retaliated against Plaintiff by "negligently" submitting a false report.

9 - ORDER REGARDING DEFENDANT'S THIRD SET OF MOTIONS IN LIMINE

## Conclusion

Defendant's third set of Motions in Limine (# 164) and requested revisions to the jury instructions are denied except as stated above.

IT IS SO ORDERED.

DATED this ___23___ day of May 2005.

                                           /s/ Owen M. Panner
                                           OWEN M. PANNER
                                           U.S. DISTRICT COURT JUDGE